UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT PEARSON,

*Plaintiff*,

v.

WELLPATH HEALTH SERVICES, *et al.*,

*Defendants*.

No. 24-CV-1714 (KMK)

OPINION & ORDER

Appearances:

Robert Pearson
Stormville, NY
*Pro se Plaintiff*

Paul A. Sanders, Esq.
Barclay Damon LLP
Rochester, NY
*Counsel for Defendant Wellpath Health Services*

Dante David De Leo, Esq.
Orange County Department of Law
Goshen, NY
*Counsel for Defendant Orange County*

KENNETH M. KARAS, United States District Judge:

Robert Pearson ("Plaintiff"), pro se, brings this Action against Wellpath Health Services ("Wellpath"), Orange County (the "County"), and several John and Jane Does (together, "Defendants") bringing claims under 42 U.S.C. § 1983 for violations of his constitutional rights while incarcerated at Orange County Jail ("OCJ"). Before the Court are Wellpath's and the County's Motions to Dismiss and Plaintiff's Motion to Appoint Counsel (the "Motions"). For the following reasons, the Court grants the Motions to Dismiss without prejudice, and denies Plaintiff's Motion to Appoint Counsel without prejudice.

# I. Background

## A. Factual Background

The following facts are drawn from the Complaint and assumed true for the purposes of the Motions. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

On January 31, 2024, Plaintiff asked an officer at his housing unit for medical assistance because he was in "very bad pain." (Compl. 4.)[1] That officer called OCJ's medical unit, and two E.R.T.[2] officers escorted Plaintiff to the medical unit. (*Id.*) A nurse came into the unit to see Plaintiff and asked him why he was there; he told her he was experiencing chest pain. (*Id.*) After the nurse left the room, Plaintiff asked one of the E.R.T. officers for permission to speak to a sergeant about other unspecified events at OCJ. (*Id.*) The officers denied that request, then told Plaintiff it was "time for [him] to leave . . . [the] medical unit," although Plaintiff had objected that he had not yet seen the nurse and the sergeant. (*Id.*) On his way out of the medical unit, one of the officers told a nurse that Plaintiff "was O.K.," there "was not anything wrong with [him]," and that he was simply "asking to see the sergeant." (*Id.*) The nurse then told the officers to take Plaintiff back to his housing unit. (*Id.* at 5.) Plaintiff told the officers that he would not return before being seen by the medical unit for his pain, and that he also wanted to speak to the sergeant. (*Id.*) One of the officers threatened to pepper spray Plaintiff if he did not return to the unit. (*Id.*) Plaintiff again told them to call the sergeant; they again threatened to spray him if he did not return to his unit; Plaintiff again asked to see the nurse and the sergeant;

---

[1] All page number citations to the Complaint are to the page number of the electronic file at Dkt. No. 1, and not to any number at the bottom of a page in that document.

[2] By "E.R.T.," the Court understands Plaintiff to be referring to Emergency Response Team officers.

and the officers again instructed Plaintiff to return to his unit. (*Id.* at 6.) Plaintiff then returned to his unit. (*Id.*)

Later that day, Plaintiff asked the unit officer if Plaintiff could "come out for a shower [and] a phone call." (*Id.*) The officer allowed him to do so. (*Id.*) Plaintiff then again asked to speak to the sergeant. (*Id.*) The officer responded that Plaintiff "could see the sergeant when he comes to the unit," but Plaintiff responded that he "was not locking back in [his] cell until he sees a sergeant or a [lieutenant]." (*Id.*) After about half an hour, the officer told Plaintiff to lock back into his cell. (*Id.*) Plaintiff then went to take his shower. (*Id.*) While Plaintiff was showering, the E.R.T. officers returned to Plaintiff's housing unit along with the sergeant and approached the shower. (*Id.*) One of the officers had drawn his pepper spray; another told that officer to "stop[,] so he did." (*Id.* at 7.) After exiting the shower, Plaintiff "cuff[ed] up" and "went down to the floor" to speak with the sergeant and lieutenant. (*Id.*) Plaintiff asked to speak with the lieutenant, who told him to speak with the sergeant instead; because Plaintiff and the sergeant were "having problems" in connection with a dry cell order Plaintiff had previously been placed on, Plaintiff was reluctant to speak with the sergeant. (*Id.*) The E.R.T. officers and sergeant later told Plaintiff to return to his cell. (*Id.*) Plaintiff refused, stating that he "wanted to see medical because [he] was in very bad pain." (*Id.*) The officers then "made a call saying . . . [Plaintiff was] refusing to lock in," and four or five officers arrived. (*Id.*)[3] One of these officers

[3] Some factual allegations in this part of Plaintiff's complaint are unintelligible. (*See generally* Compl. 7–8.) Although the Court has endeavored to draw liberal inferences from what of Plaintiff's Complaint it can decipher, there are certain allegations it cannot evaluate because it cannot understand them. *See, e.g.*, *Grant v. 115 Precinct*, No. 24-CV-3714, 2024 WL 2816559, at *2 (E.D.N.Y. June 3, 2024) (noting the court's duty to "read the . . . *pro se* complaint liberally" but dismissing complaint without prejudice where it was "largely illegible and unintelligible" such that "neither the [c]ourt nor [the d]efendants can reasonably be expected to identify [the p]laintiff's claims"); *Ghosh v. N.Y.C. Hous. Auth.*, No. 21-CV-6139, 2023 WL

called the medical unit, and said the medical unit would not admit Plaintiff "because of what he did the first time he was in medical," which Plaintiff claims is a reference to false accusations that he threatened an officer. (*Id.* at 8–9.) Plaintiff alleges the medical unit has continued to decline to see him, including in an incident on February 27, 2024, in which "one of the nurses [falsely] tried to say that [Plaintiff] refused to be seen." (*Id.* at 9.)

B. Procedural Background

Plaintiff filed his Complaint on March 1, 2024, indicating that he was bringing claims against each Defendant under 42 U.S.C. § 1983 for violating his constitutional rights. (*See* Compl. 2.)[4] The Court issued an Order of Service on June 28, 2024, directing the Orange County Attorney's Office to identify the officers against whom Plaintiff sought to bring this Action, instructing Plaintiff to amend his Complaint on receipt of that information, and directing service on certain Defendants. (*See* Order of Service (Dkt. No. 10).) The County responded to the Order, (*see* Letter from Dante De Leo to Ct. (Aug. 23, 2024) (Dkt. No. 13)), but Plaintiff did

---

3612553, at *6 (S.D.N.Y. Feb. 27, 2023) (recommending dismissal of "largely unintelligible" complaint where "underlying facts are obscured within a convoluted series of paragraphs that make it difficult to understand who did what to whom"), *report and recommendation adopted*, 2023 WL 3746617 (S.D.N.Y. Mar. 20, 2023).

[4] The Court notes that the attachments to the Complaint indicate Plaintiff filed a grievance concerning the events of the Complaint sometime in early February 2024. (*See* Compl. 12 (attaching decision from OCJ's Grievance Coordinator dated February 8, 2024).) *See* 9 N.Y.C.R.R. § 7032.4 (New York regulations requiring grievance coordinators to issue written determinations within five days of their receipt of a grievance). The Court explained in a related case, also against the County, that the Prison Litigation Reform Act ("PLRA") requires Plaintiff to appeal the denial of his grievances before suing in federal court, and it was implausible Plaintiff had done so on a similarly short timeframe. *Pearson v. Cappelli*, No. 24-CV-8254, 2026 WL 851351, at *3–4 (S.D.N.Y. Mar. 26, 2026). Because neither the County Defendants nor the Wellpath Defendants make the same argument here, the Court does not consider PLRA exhaustion in its analysis of the Motions to Dismiss.

not amend his Complaint although he was instructed to do so, (*see* Dkt.).[5] Orange County was served on August 15, 2024, and Wellpath was served on August 21, 2024. (Marshal's Process Receipt & Return of Service Executed (Dkt. Nos. 15, 16, 17, 22).) Wellpath and the County moved to dismiss on, respectively, October 2, 2025, and October 3, 2025. (*See* Wellpath's Mot. to Dismiss (Dkt. No. 58); Mem. in Supp. re: Mot. to Dismiss ("Wellpath Mem.") (Dkt. No. 60); County's Mot. to Dismiss (Dkt. No. 62); Mem. in Supp. re: Mot. to Dismiss ("County Mem.") (Dkt. No. 64).) Plaintiff did not file any opposition to Wellpath's or the County's Motions, which the Court accordingly treats as fully submitted.[6] (*See* Dkt.) Plaintiff also requested the Court appoint him pro bono counsel, filing the request on both this docket and the docket of a related case, on December 16, 2025. (*See* Appl. for Ct. to Appoint Counsel (Dkt. No. 71).)

---

[5] In a related case, Plaintiff was also instructed to amend after receiving responses to the Court's *Valentin* Order, (*see* Dkt. No. 10 (24-CV-1714 Dkt.)), but while he failed to do so, the Court nevertheless ordered his complaint in that Action served on the individual defendants named in the response to the *Valentin* Order, (*see* Dkt. No. 48 (24-CV-1714 Dkt.)). The Court cannot extend the same courtesy here. Unlike in the related Action, the letter in response to the *Valentin* Order here noted it was "unclear" who certain individual defendants were, and it provided a list of possible names to Plaintiff, (*see* Letter from Dante de Leo to Court (Aug. 23, 2024)), but he nevertheless did not amend his Complaint, (*see* Dkt.). *See Urgiles v. Dep't of Corr. of N.Y. State*, No. 20-CV-4373, 2021 WL 3682238, at *1 (S.D.N.Y. Aug. 19, 2021) (explaining how that court had previously granted the plaintiff leave to amend in response to *Valentin* letter that would help the State identify individual defendants, and ultimately dismissing the plaintiff's claims for failure to prosecute where the plaintiff did not so amend).

[6] *See, e.g.*, *Hopkins v. Seabrook*, No. 14-CV-600, 2015 WL 685220, at *1 (S.D.N.Y. Feb. 18, 2015) (treating motion as fully submitted and proceeding to resolve it where the plaintiff had failed to timely file an opposition); *Ramrattan v. Brown*, No. 12-CV-7818, 2014 WL 2604031, at *2 (S.D.N.Y. June 9, 2014) (same).

## II. Discussion

### A. Standard of Review

#### 1. Motion to Dismiss

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation

omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012))). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should only consider the complaint, documents appended to the complaint or incorporated by reference, and matters judicial notice can be taken of in ascertaining facts for a motion to dismiss).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must construe his submissions "liberally and interpret [them] to raise the strongest arguments that [they] suggest[]." *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *7 (S.D.N.Y. Sept. 23, 2024) (alterations adopted) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (same). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of

procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

2. Motion to Appoint Counsel

Although there is not a constitutional right to counsel in civil cases, the Court has the authority to appoint counsel for indigent parties. *See* 28 U.S.C. § 1915(e)(1).[7] Yet, "[b]road discretion lies with the district judge in deciding whether to appoint counsel pursuant to this provision." *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). There is a three-step inquiry the Court should consider when analyzing whether the appointment of counsel is appropriate. *See Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203 (2d Cir. 2003) (describing "principles" the district court should consider in deciding a motion to appoint counsel).

First, "the Second Circuit has interpreted [28 U.S.C. § 1915(e)(1)] to require that the plaintiff be unable to obtain counsel 'before appointment will even be considered.'" *Morris v. Moran*, No. 12-CV-7020, 2014 WL 1053658, at *1 (S.D.N.Y. Mar. 14, 2014) (quoting *Hodge*, 802 F.2d at 61); *see also Justice v. Kuhnapfel*, 982 F. Supp. 2d 233, 235 (E.D.N.Y. 2013) ("A plaintiff requesting appointment of counsel must show that she is unable to obtain counsel before

[7] A litigant may demonstrate that he or she is indigent by successfully applying for leave to proceed in forma pauperis ("IFP"). *See Syville v. City of New York*, No. 19-CV-9988, 2020 WL 9171113, at *2 (S.D.N.Y. May 8, 2020) (concluding the plaintiff demonstrated indigent status where he was proceeding IFP). Because Plaintiff has been granted leave to proceed IFP, he has satisfied a demonstration of indigency. (Order Granting IFP Application (Dkt. No. 7).)

appointment will even be considered." (quotation marks omitted); *Williams v. Nicholson*, No. 12-CV-8300, 2013 WL 1800215, at *2 (S.D.N.Y. Apr. 22, 2013) ("Where, in a civil action, an applicant fails to make any effort to engage counsel, appointing counsel for the applicant is not appropriate and should not even be considered . . . .").

Second, the Court "'should . . . determine whether the indigent's position seems likely to be of substance.'" *Morris*, 2014 WL 1053658, at *1 (quoting *Hodge*, 802 F.2d at 61); *see also Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010) ("This Court considers motions for appointment of counsel by asking first whether the claimant has met a threshold showing of some likelihood of merit." (quotation marks omitted)). In other words, the claim must not be so "highly dubious" that the plaintiff appears to have no chance of success. *Hodge*, 802 F.2d at 60 (quotation marks omitted). In making this determination, the Court construes pleadings drafted by pro se litigants liberally and interprets them to raise the strongest arguments that they suggest. *See Triestman*, 470 F.3d at 474 (explaining pro se filings should be so construed); *Sommersett v. City of New York*, 679 F. Supp. 2d 468, 472 (S.D.N.Y. 2010) (same).

Third, if these threshold requirements are met, the Court should proceed to consider other prudential factors such as

> the [plaintiff's] ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented [to the fact finder], the indigent's ability to present the case, the complexity of the legal issues and any special reason . . . why appointment of counsel would be more likely to lead to a just determination.

*Ferrelli*, 323 F.3d at 203–04 (quoting *Hodge*, 802 F.2d at 61–62); *see also Garcia v. USICE (Dep't of Homeland Sec.)*, 669 F.3d 91, 98–99 (2d Cir. 2011) (listing *Hodge* factors).

B. Analysis

1. Motions to Dismiss

a. Claims Against the County

Plaintiff originally named the Orange County Jail as a defendant in his Complaint. (*See* Compl. 3.) But because "Orange County Jail is not a 'person' within the meaning of Section 1983" and cannot be sued thereunder, the Court "dismisse[d] Plaintiff's claims against the Orange County Jail" and substituted Orange County, which *can* be sued under § 1983. (Order of Service 3.) The Court construed the Complaint as alleging the County injured him through the conduct of its employees at OCJ. (*See id.*)

"A municipality or other local government," like Orange County, "may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)). The point of *Monell*'s strictures is to ensure municipalities are held accountable for their particular failures, rather than those of individual officers. *See Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) (noting that a municipality "may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees").

First, Plaintiff must plausibly allege the existence of a municipal policy or custom relevant to his case. "A 'policy' or 'custom' can be demonstrated in a variety of ways."

*Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 292 (E.D.N.Y. 2022) (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021)). These include:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

The Court must dismiss Plaintiff's claim against the County because it identifies no policy or custom on the County's part for which the County could be held liable. Plaintiff only points to alleged mistreatment by individual officers in his Complaint and does not offer any basis to impute that mistreatment to the County or to OCJ—he neither points to a formal policy that resulted in the events in his Complaint, nor actions by government officials, nor consistent and widespread practices based on any incidents like what he alleges, nor any failures by policymakers to provide adequate training. (*See generally* Compl. 4–10.)[8] Accordingly, any claims against the County are dismissed. *See, e.g.*, *Rodriguez v. City of New York*, No. 20-CV-11045, 2023 WL 3001870, at *2 (S.D.N.Y. Apr. 19, 2023) (dismissing § 1983 claim against city

---

[8] Plaintiff likewise has not claimed any of the individuals he sues are policymakers, which would have allowed him to assert *Monell* claims against them if the other elements of a *Monell* claim were pled here. *See, e.g.*, *Lions v. N.Y. State Off. of Child Support Enf't*, No. 24-CV-7181, 2025 WL 81421, at *7 (S.D.N.Y. Jan. 10, 2025) ("*Monell*[] . . . expressly envisioned liability for officials whose acts or edicts may fairly be said to represent official policy[.]" (alterations adopted and quotation marks omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986))); *Harasz v. Katz*, 239 F. Supp. 3d 461, 505 (D. Conn. 2017) (explaining that a "*Monell* claim is actionable . . . as to . . . municipal officials" (quotation marks omitted) (quoting *Amory v. Katz*, No. 15-CV-1535, 2016 WL 7377091, at *5 (D. Conn. Dec. 19, 2016))).

where the plaintiff "offer[ed] no allegations regarding the existence of a New York City municipal policy or custom that caused the constitutional injury alleged"); *Maloney v. County of Nassau*, 623 F. Supp. 2d 277, 289 (E.D.N.Y. Sept. 25, 2007) (dismissing § 1983 claim against county where complaint did "not allege facts which suggest the existence of a municipal policy or custom" and "[a]t most, . . . describe[d] a single incident in which municipal employees allegedly violated [the] plaintiff's Constitutional rights").

b. Claims Against Wellpath

Plaintiff also named Wellpath as a defendant in this Action. (*See* Compl. 3.) "Generally, private entities are not subject to Section 1983," but a private entity's actions "are attributable to the state when there exists 'such a close nexus between the state and the challenged action that the state is responsible for the specific conduct of which the plaintiff complains.'" *Muniz v. Orange County*, No. 22-CV-529, 2024 WL 1142550, at *8 (S.D.N.Y. Mar. 14, 2024) (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)). The Second Circuit has explained that "[t]he actions of nominally private entities are attributable to the state when those actions meet one of three tests:" first, "the compulsion test," where "the entity acts pursuant to the coercive power of the state or is controlled by the state;" second, "the public function test," where "the entity has been delegated a public function by the state;" and third, "the joint action test or close nexus test," where "the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies." *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010) (quotation marks and emphases omitted, alterations adopted); *see also Dorce v. City of New York*, 608 F. Supp. 3d 118, 138 (S.D.N.Y. 2022) (same) (citing *Fabrikant*, 691 F.3d at 207).

Reading the Complaint liberally, as it must, the Court understands Plaintiff as alleging Wellpath is the contractor providing medical services and employing the nurses at OCJ, because the Complaint gives Wellpath's "identifying information" as "[t]he medical [d]epartment of O.C.J.," and described the nurses as "nurses for Wellpath." (*See* Compl. 3.) Under the "public function" test, and drawing all inferences in Plaintiff's favor, Plaintiff has plausibly alleged Wellpath and its nurses are state actors for the purposes of § 1983, because "the provision of medical care to incarcerated prisoners is a public function, even if private [employees] contract with the government to provide those services." *Young v. Halle Housing Assocs., L.P.*, 152 F. Supp. 2d 355, 365 (S.D.N.Y. 2001); *see also Illescas v. Annucci*, No. 21-CV-8473, 2022 WL 17539696, at *3 (S.D.N.Y. Dec. 7, 2022) ("Courts have sometimes found non-public medical providers to be state actors when they provide medical care to inmates at a prison facility." (citing *West v. Atkins*, 487 U.S. 42, 50–51 (1988))); *Dubarry v. Annucci*, No. 21-CV-5487, 2022 WL 4485359, at *12 (S.D.N.Y. Sept. 27, 2022) (explaining that "courts have found . . . that a private entity that contracts with a correctional facility to provide medical care is a state actor for § 1983 purposes").

But even if Wellpath is a state actor, the Complaint does not provide any factual allegations that would support holding Wellpath liable under § 1983. "Despite the fact that it is a private entity," Wellpath "enjoys the benefit of the *Monell* requirements for the same reason it may be named as a defendant in a § 1983 suit," meaning that "to bring a § 1983 claim against" Wellpath, Plaintiff "must plausibly allege that the constitutional violations he alleges were caused by official policies or customs of" Wellpath. *Bess v. City of New York*, No. 11-CV-7604, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013); *see also Williams v. Kepro*, No. 21-CV-302, 2023 WL 5806418, at *10 (N.D.N.Y. Aug. 8, 2023) (applying *Monell* to § 1983 claim against

prison medical services contractor). Plaintiff has not done so. Indeed, the Complaint does not mention Wellpath at all, except to name it as a defendant and note that the nurses at OCJ worked for Wellpath. (*See generally* Compl. 3–10.) That the nurses at OCJ worked for Wellpath is not a sufficient basis to hold Wellpath liable for any of their constitutional torts. *See Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) ("Private employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that action pursuant to an official policy of some nature caused a constitutional tort." (citations and quotation marks omitted) (alterations adopted)); *see also Ruiz v. Parkchester Pub. Safety Dep't*, No. 23-CV-7423, 2023 WL 6977608, at *2 n.2 (S.D.N.Y. Oct. 20, 2023) (same). Any claims against Wellpath are accordingly dismissed.

c. Claims Against Individual Defendants

Plaintiff's Complaint originally named as defendants "[a]ll the nurses that had something to do with this" and "[a]ll the C.O. officers that had something to do with this." (*See* Compl. 3) In its Order of Service, the Court directed the Clerk of Court to replace these references with John and Jane Doe identifiers and ordered the County to ascertain their identities to the extent possible. (*See* Order of Service 5, 7.) The Court also ordered Plaintiff to amend his Complaint within 30 days of receiving the County's response and provided Plaintiff an amended complaint form. (*Id.* at 5.) The County responded on August 23, 2024, offering possible identities for the defendants. (*See* Letter from Dante De Leo to Court (Aug. 23, 2024).) Plaintiff did not timely amend, and has not yet amended, his Complaint, although it has been more than two years since he received the information he needed to do so and he has requested (and received) copies of the docket in this Action more than once in that time. (*See generally* Dkt.) Accordingly, no individual Defendants have yet been served.

Because Plaintiff has not amended his Complaint to name the John and Jane Doe defendants, although he has had ample opportunity to do so, the Court dismisses Plaintiff's claims against the individual John and Jane Doe defendants. *See Williams v. Johnson*, No. 17-CV-2351, 2019 WL 1437820, at *8 (S.D.N.Y. Mar. 31, 2019) (dismissing claims sua sponte against unidentified John Doe defendants when suit was filed nearly two years earlier and plaintiff "ha[d] not amended his complaint to identify the John Doe defendants"); *see also West v. Lagree*, No. 22-CV-231, 2024 WL 3649891, at *1 n.3 (N.D.N.Y. June 10, 2024) (recommending dismissal of claims against John Doe defendants where "[i]n the more than two years that have passed" since complaint was filed, "plaintiff has not identified the John Doe defendants, and has not served process upon them," not for "lack of opportunity"), *report and recommendation adopted*, 2024 WL 3548785 (N.D.N.Y. July 26, 2024); *Jackson v. Fairchild*, No. 04-CV-73, 2007 WL 778133, at *5 (N.D.N.Y. Mar. 12, 2007) (dismissing without prejudice pro se plaintiff's claims against John Doe defendant who had not been served, noting U.S. Marshal's Service could not effect service on John Doe defendants).

2. Motion to Appoint Counsel

A request by Plaintiff for the Court to appoint counsel remains pending on this docket. (*See* Appl. for Ct. to Appoint Counsel.) The same motion, however, was filed on two dockets—this Action, and a related case with the same caption, *Pearson v. Wellpath Health Services*. (*See* Appl. for Ct. to Appoint Counsel; Appl. for Ct. to Appoint Counsel (Dkt. No. 80, 24-CV-1657 Dkt.) (the identical motion on the other docket).) For the reasons the Court explained in denying this Motion without prejudice on the docket in Plaintiff's related case, it denies the Motion without prejudice as to this case as well. (*See* Dkt. No. 82 at 4–7 (24-CV-1657 Dkt.) (denying

Plaintiff's application to appoint counsel chiefly because he had provided little detail as to his efforts to obtain counsel and his claims were not particularly complex or unique).)

## III. Conclusion

For the reasons set forth above, the Court grants Defendants' Motions to Dismiss without prejudice and denies Plaintiff's Motion to Appoint Counsel without prejudice. If Plaintiff wishes to file an amended complaint alleging additional facts and addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion and Order. Failure to properly and timely amend will likely result in dismissal of the claims against Defendants with prejudice. Plaintiff may refile his Motion for Appointment of Counsel if his circumstances change in a way that is relevant to the *Hodge* factors. The Clerk of Court is respectfully directed to terminate the pending Motions (Dkt. Nos. 58, 62, 71) and mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: September 25, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge